HIGGINS, Justice.
 

 The plaintiff, as owner and lessor, provisionally seized the contents of the premises 521-23 Royal street, in the city of New Orleans, for the rent due by Sam S. Parker, its tenant, amounting to about $6,000.
 

 The Ducros Tile & Terrazzo Company, Inc., Southern Tile Company, Inc., Kraftile Company, Inc., Colonna & Co., Quad Stove Company, and Willette Corporation intervened, claiming that the Ducros and Southern Tile Companies occupied the premises under alleged verbal subleases from Parker and that, as these companies had paid all of the rent due by the sub-lessees to Parker, their lessor, at the time of the seizure, the property belonging to the respective interveners was not subject to the lessor’s lien and privilege of the plaintiff.
 

 The plaintiff answered the interventions, denying that there were any subleases, and averring that the lease between Parker and itself contained a general prohibition against subletting without the written consent of the lessor and a special provision against subletting to the Ducros and Southern Tile Companies without the written consent of the lessor; and that it was understood that, if. these two interveners, which had previously occupied the premises, would continue to occupy them, they would be considered as joint occupants or co-tenants thereof so that their property in the premises would remain pledged for the "rent.
 

 The interveners admitted the prohibitions contained in the lease, but denied that they were bound thereby, because, at the time of making the alleged verbal subleases with Parker, the written lease between plaintiff and Parker had not been recorded and that, being third parties to the transac
 
 *963
 
 tion, they were not bound by the terms of the unrecorded lease.
 

 There was judgment in favor of plaintiff, dismissing the interventions, and all of the interveners, except the Willette Corporation, have appealed.
 

 At the outset, we may point out that Robert Ducros, president of the Ducros Tile & Terrazzo Company, Inc., one of the interveners, is the one who practically presented the entire defense for all of the interveners, some of which are claiming that their goods found in the premises were sent on consignment to the Ducros and Southern Tile Companies. They are, therefore, in no better position, as far as their rights are concerned, than their alleged consignees.
 

 The original Southern Tile Company was operated by Robert Ducros and was the owner of and occupied the premises in question for about ten years before the present controversy arose. The company had a homestead loan with the plaintiff. In 1930 the Southern Tile Company retroceded the property to the plaintiff, which, in turn, transferred it on the usual homestead terms to Mrs. Cora Ducros, mother of Robert Ducros. On January 31, 1933, Mrs. Ducros retroceded the property to the plaintiff, following which the lease between Parker and the plaintiff was made. The old Southern Tile Company went into receivership, and its assets were purchased by the new Southern1 Tile Company, of which Parker was president. The new Southern Tile Company was organized March 11, 1932. The Ducros Tile & Terrazzo Company, of which Ducros was president, was organized on January
 
 7
 
 1931. For some time prior to the Parke# lease, the new Southern Tile Company and the Ducros Company occupied the premises. The premises were specially arranged and designed for the particular kinds of business carried on by the two companies.
 

 The plaintiff constantly had difficulty in collecting from Ducros the installments on its mortgage loan, or rent, which he was supposed to pay to plaintiff under an arrangement whereby the money was to be applied on the mortgage loan of his mother. As a result thereof, plaintiff refused to make a direct lease with these two companies.
 

 Sam S. Parker, president of the Southern Company negotiated with the plaintiff homestead, the owner of the property, for a lease thereon. Robert Ducros was present at several of the meetings held by the parties during the negotiations and the question of subleases to the Ducros and Southern Tile Companies was discussed. The homestead definitely took the position that it would not lease the premises, except with a provision against subleasing without its written consent. The lease was finally signed by Parker, individually, on January 31, 1933, but it was not recorded.
 

 The pertinent clause in the lease reads as follows:
 

 . “It is further understood and agreed by and between the parties hereto, that no sublease shall be made of the ground floor and appurtenances to the Southern Tile Company, Inc. and the Ducros Tile & Terrazzo Company, Inc. without the written consent of lessor and that the occupancy by said Southern Tile Company Inc. and Ducros Tile & Terrazzo Company, Inc. shall be
 
 *965
 
 considered that of a third party and not a subtenant * * *. ”
 

 The purpose of this clause was to maintain a lessor’s lien on the property of Ducros and Southern Tile Companies should they continue to occupy the premises. The plaintiff’s representatives pointed out that it was difficult to prove what property in the leased premises belonged to a sublessee, who claimed to have paid his rent, and disprove that he had not paid the rent. So, in order to avoid any such involvement, the restrictive clause against subletting was placed in the lease with Parker, particularly since plaintiff had previously had unsatisfactory results from the two tile companies. This was to give the homestead control of the terms of any subleases, so as to protect itself.
 

 The only direct evidence tending to show that there were verbal subleases between Parker and the Ducros and Southern Tile Companies is the testimony of Robert Ducros that such verbal subleases were made. In order to corroborate his statement, the minutes of the board of directors of the Ducros Company held on February 11, 1933, were produced. The minutes of the meeting show that Mr. Ducros stated that “lease arrangements” had been made with Parker, but nothing is mentioned about a verbal sublease. It was at this very time that the negotiations were being made by Parker with the plaintiff, in which Robert Ducros was participating to have the homestead agree to subleases, which the homestead agreed to approve in the form and on the terms of the subleases drafted by its attorney. These proposed subleases were designed to avoid the very situation that is now presented. At that very time, Mr. Ducros, who had been appointed by Mr. Parker to collect the rent from all of the tenants in the building, including the upper floors which were occupied as apartments, as well as the lower floor, occupied for commercial purposes, knew that negotiations were being carried on for the purpose of securing the written consent of the homestead to sublet the lower floor to the Ducros and Southern Tile Companies. The minutes, therefore, could just as well refer to this proposed “lease arrangement,” as well as the alleged verbal sub-lease. It is, indeed, strange that while these negotiations were being carried on and before any definite answer had been given by the homestead, that Parker, in violation of his lease with the plaintiff, would have entered into verbal subleases with these two tile companies.
 

 The evidence shows that the minutes are dated February 11, 1933, but that on February 18, 1933, the attorney'for the homestead had written Mr. Parker a letter attaching the two proposed subleases and the resolutions which were to be executed by the board of directors of the two tile companies in connection therewith.
 

 Another unusual feature of the meeting held by the board of directors of the Ducros Tile Company on February 11, is that, while Parker was in the outer office, he was not called before the board of directors of the company to confirm its president’s report that the parties had entered into a three year verbal sublease. .There were three other employees and officers of the Ducros Company, who testified that the verbal sub
 
 *967
 
 lease was ratified at the meeting of February 11, 1933; but it is obvious that their statements are predicated upon the report of Mr. Ducros, the president of the corporation.
 

 On the other hand, Mr. Parker testifies positively that he did not enter into any verbal subleases for three years with the Ducros and the Southern Tile Companies. He emphatically states that this would have been in plain violation of the clear and definite agreement he had with the homestead, as well as the specific prohibition against subletting to the two tile companies without the written consent of the homestead. Such a breach of the lease w;ould have involved him in serious litigation to have the lease set aside. The fact that extensive negotiations were carried on by Parker, Ducros, and their attorney with the officers and the attorney of the homestead, conclusively shows that Parker had no intention of violating that provision in the lease. He was striving in every way possible to comply with it and the homestead was insisting at all times that he do so, because of its former unsatisfactory financial relations with the tile companies.
 

 The evidence, stripped of its corroborated circumstances, resolves itself into the question of whether or not the court will accept the testimony of Ducros that there were verbal subleases for three years, against Parker’s testimony that there was not. It is our conclusion that the testimony of Parker is more impressive and consistent with reason than that of Ducros. This apparently was also the opinion of the trial judge.
 

 Since we have concluded that there were no subleases and therefore the tile companies did not enjoy the status of subtenants, what was the relation between them and Parker ?
 

 The record shows that these two tile companies, together with Messrs. Parker and Ducros, desired to continue in the occupancy of the building, because it was specially adapted to their particular businesses. It appears that neither of the tile companies were able to finance the matter in a satisfactory way with the homestead, but that Mr. Parker was able to do so with the assistance of the two tile companies.. In other words, collectively they might cope with the financial problem confronting them, but separately they could not. The two tile companies had for a considerable period of time occupied the premises before the lease between Parker and the homestead was entered into and desired to remain therein. They were, therefore, occupying the place as third parties, joint occupants or cotenants with Parker. In either event, their effects and property on the premises were liable for the rent. Rev.Civ.Co.de, arts. 2705, 2706, 2707, and 2708. The instance is not dissimilar to that of Jansen v. Bellamore, 147 La. 900, 86 So. 324.
 

 For the reasons assigned, the judgment appealed from is affirmed.